**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PANKAJ SHAH and VIPUL AGGARWAL,
individually and on behalf of all others
similarly situated,

     Plaintiffs,

     v.

ASIA TV USA LIMITED and ZEE
ENTERTAINMENT ENTERPRISES
LIMITED,

     Defendants.

No. 23cv21722 (EP) (CF)

**OPINION**

**PADIN, District Judge.**

Plaintiffs Pankaj Shah and Vipul Aggarwal, individually and on behalf of all other persons similarly situated, bring this putative class action against Defendants Asia TV USA Limited ("Asia TV") and Zee Entertainment Enterprises Limited ("Zeel") for alleged violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). D.E. 4 ("Amended Complaint" or "Am. Compl.").

Following jurisdictional discovery, Defendants move to dismiss the Amended Complaint on both jurisdictional and merits-based grounds. D.E. 60-1 ("Motion" or "Mot").[1] Plaintiffs oppose. D.E. 62 ("Opposition" or "Opp'n").[2] Defendants reply. D.E. 63 ("Reply"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). Because

---

[1] The Court refers to Defendants' brief as the "Motion" for ease of reference. The Notice of Motion is at D.E. 60.

[2] Although the Opposition appears on the docket as a "Reply Brief," the Court will treat Plaintiff's filing as its Opposition to Defendants' Motion.

this Court finds that the Amended Complaint must be dismissed under the *forum non conveniens* doctrine, it will **GRANT** Defendants' Motion to **DISMISS** the Amended Complaint ***with prejudice***.

## I.    BACKGROUND

### A.    Factual Background[3]

#### 1.    Zeel

Zeel is a media company based in Mumbai, India.  D.E. 60-3 ("Kolleri[4] Declaration" or "Kolleri Decl.") ¶¶ 4, 11-12.  One of Zeel's subsidiaries in Z5X Global FX LLC ("Z5X"), a company based in the United Arab Emirates.  *Id.* ¶ 5; D.E. 62-2 ("Zeel Organizational Chart").  Z5X owns the Zee5 app and Zee5.com (collectively, "Zee5") as well as the Apple App Store and Google Play Store accounts from which users download the Zee5 app.  Kolleri Decl. ¶ 13.

Zee5 is marketed as "'the world's largest streaming platform for South Asian stories' with 'over 4000+ movies, 316+ originals, 2300+ TV shows, & more,' as well as a 'vast content library of Hindi movies, Tamil movies, Telugu movies, and more.'"  Am. Compl. ¶ 2 (quoting ZEE5: MOVIES, TV SHOWS, SERIES, GOOGLE PLAY STORE https://play.google.com/store/apps/details?id=com.graymatrix.did&hl=en_US&gl=US).  Through

---

[3] The facts in this section derive from the Amended Complaint's well-pled factual allegations, which the Court presumes to be true for purposes of resolving this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facts in this section also derive from undisputed facts related to personal jurisdiction elicited through Defendants' Motion, which this Court may rely on to decide issues of personal jurisdiction.  *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).   In addition, the Court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Guimaraes v. Metal Transp. LLC*, No. 23-13183, 2024 WL 1557291, at *1 n.3 (D.N.J. Apr. 10, 2024) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).   Accordingly, the Court also relies on several exhibits attached to the parties' briefs.

[4] Mr. Bhushan Kolleri is the Chief Product & Innovation Officer of Zeel.  *Id.* ¶ 1.

a licensing agreement with Z5X, Zeel operates Zee5 in India.  *Id.* ¶ 6.  Pursuant to the parties' licensing agreement, Z5X retained ownership of all intellectual property related to Zee5.  D.E. 60-12 at 8.

Through multiple layers of its corporate structure, Zeel also wholly owns Asia TV, Zeel's subsidiary that operates in the United States.  *See* Zeel Organizational Chart.  Asia TV licenses content from Zeel and Z5X.  D.E. 60-6 ("Pasricha Decl.") ¶¶ 4-5.  Asia TV earns fee-based commissions on the revenue generated from those agreements.  *Id.* ¶ 10.

2.    *Signing up for a Zee5 account*

The Zee5 app can be downloaded through the Apple App Store and through the Google Play Store.  Am. Compl. ¶ 14.  Zee5.com can be accessed via any web browser.  *Id.*  Individuals can either create a free account, which provides access to some of Zee5's content, or, they can sign up for a paid (premium) account.  *Id.* ¶¶ 15-16.  To register for a premium subscription to Zee5, a user must consent to Zee5's Terms of Use[5] and Privacy Policy[6].  Kolleri Decl. ¶ 21.  For example, someone signing up for a Zee5 premium account in 2021 would see the following:

---

[5] Both parties have provided versions of Zee5's Terms of Use.  As explained *infra*, the Court finds the differences between the iterations of the Terms of Use to be immaterial for purposes of resolving Defendants' Motion.  The Court relies on the version of the Terms of Use at D.E. 60-4 ("Terms of Use"), which is an accurate representation of a screenshot from the account registration process for a premium subscription to Zee5 as it appeared in or around June 2021.  *See* Kolleri Decl. ¶¶ 7, 22.  And, for ease of reference, the Court uses the page numbers automatically generated by CM/ECF.

[6] D.E. 60-5 ("Privacy Policy").



D.E. 60-9.[7]

The Terms of Use contain the following provisions:

<u>INTERNATIONAL USE</u>

. . . By browsing or using [Zee5], YOU hereby acknowledge that Zeel[8] is not responsible or liable in any manner to comply with any local laws of YOUR territory except India with respect to [Zee5].

---

[7] Defendants represent this screenshot is an accurate representation of the account registration process for a premium subscription to Zee5 as it appeared in or around June 2021. Kolleri Decl. ¶ 22 (citing Mot. at 28).

[8] The Terms of Use provide that Zee5 (both the app and website) are owned, operated, and maintained by Zeel. Terms of Use at 2.

PRIVACY POLICY

All information provided by You or collected by us shall be governed in accordance with the Privacy Policy located at www.zee5.com/privacypolicy.

Terms of Use at 11.  The Terms of Use also include a forum selection clause:

LAW DISPUTES

These TERMS and all matters arising from it are governed by and construed in accordance with the laws of India and courts of Mumbai, India shall have exclusive jurisdiction over all disputes arising in connection with these TERMS.

*Id.* at 12 (herein, the "Forum Selection Clause").

The Privacy Policy users agreed to—and which was incorporated into the Terms of Use— "governs the use of [p]ersonal [i]nformation shared . . . with or collected by [Z5X] from the users or subscribers of our online services in your country including the [Zee5] service . . ." Privacy Policy at 2.[9]  The Privacy Policy includes several provisions regarding the use of subscribers' information, including the following:

**COLLECTION AND USE OF PERSONAL INFORMATION**

Information we collect

We may ask for and collect the following personal information about you when you use [Zee5]. We would like to emphasis [sic] here that without this information we may not be able to provide you with all the requested services; Information collected includes but not limited to:  First and Last Name, Email id, Primary Phone No/Mobile Number, Country, Date of Birth and Gender.

We collect information about you and your use of our service, your interactions with us and our advertising, as well as information regarding your computer or other device used to access our service (such as smart TVs, mobile devices, tablets, and certain streaming devices). The information includes: Activities on the [Zee5] such as type of content, watch history, search queries etc. [and] device information like device id, device model etc. and other unique identifiers.

---

[9] For ease of reference, the Court uses the page numbers automatically generated by CM/ECF.  In the Privacy Policy, Z5X is defined as the "Company."  *See* Privacy Policy at 2.

*Id.* at 3.

The Privacy Policy also contains the following disclosure regarding the potential

sharing of users' personal information to third parties:

**DISCLOSURE TO THIRD PARTIES**

General Disclosure

At times [Z5X] may make certain personal information available to strategic partners that work with [Z5X] to provide you with service, or that help [Z5X] market to customers.  For example, when you purchase and activate subscription, you authorize [Z5X] to exchange the information you provide during the activation process.

We do not share your personal information with other companies, organizations, or individuals outside of [Z5X] except in the following cases:

Advertising

We use third-party advertising companies to serve personali[z]ed advertisements when you visit or use our website, mobile application or services. These companies may use information (including but not limited to your name, address, email address or telephone number or other PII) about your visits or use to particular website, mobile application or services, in order to provide personali[z]ed advertisements about goods and services of interest to you.

*Id.* at 6.

> 3.    *The VPPA*

As Plaintiffs explain in the Amended Complaint, Congress passed the VPPA after a movie

rental store disclosed the video rental history of Judge Robert Bork (then a nominee to the United

States Supreme Court), which was ultimately published in a newspaper.  Am. Compl. ¶ 8.

The VPPA prohibits "[a] video tape service provider" from "knowingly disclos[ing], to

any person, personally identifiable information concerning any consumer of such provider." 18

U.S.C. § 2710(b)(1). Personally identifiable information ("PII") is defined in the VPPA as

"information which identifies a person as having requested or obtained specific video materials or

services from a video tape service provider." 18 U.S.C. § 2710(a)(3).  In 2012, Congress amended

6

the VPPA to apply to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." Am. Compl. ¶ 9 (quoting S. Rep. 112-258, at 2).  Under the VPPA, individuals may sue an alleged violator for monetary damages as well as preliminary and equitable relief.  18 U.S.C. § 2710(c)(2).

### 4.    The Amended Complaint

According to Plaintiffs, Defendants are "video tape service provider[s]" subject to the VPPA.  *Id.* ¶ 6.  Plaintiffs allege that "at no point d[id] Defendants receive permission from users to share their [PII] or video viewing information with third parties" and that "unbeknownst" to them, Zeel has knowingly and intentionally disclosed users' PII to third parties in violation of the VPPA.  *Id.* ¶¶ 4, 20.

To demonstrate how Defendants were violating the VPPA, Plaintiffs' counsel retained a private research company to "analyze what information was disclosed to third parties when a premium (paid) Zee account user watched an episode of a TV show on either the Zee5 App or Zee5 Website."  *Id.* ¶ 22.  As thoroughly detailed in the Amended Complaint, this research "revealed that Defendants transmit to several third parties information sufficient to identify specific [members of Plaintiffs' putative class] and the specific videos they watch."  *Id.* ¶ 22; *see id.* ¶¶ 23-181 (detailing how Defendants allegedly violate the VPPA by knowingly disclosing app users' PII to third-parties for the purposes of marketing, advertising, and analytics).

Based on these allegations, Plaintiffs (on behalf of themselves and the putative class) assert two counts under the VPPA:  (1) a violation of the VPPA for the proposed "App Class" Defendants (Count I); and (2) a violation of the VPPA for the proposed "Website Class" Defendants (Count II).

**B.    Procedural Background**

Plaintiffs commenced this action on October 31, 2023.  D.E. 1.  On November 27, 2023, and before Defendants appeared, Plaintiffs filed the Amended Complaint.

Following the exchange of pre-motion letters, Defendants filed a motion to dismiss on March 29, 2024, in which they asserted that the Court lacked personal jurisdiction over Zeel.  D.E. 24.  After the motion was fully briefed, the Court entered an order:  (1) denying Defendants' motion to dismiss; and (2) granting limited jurisdictional discovery.  D.E. 33.  Jurisdictional discovery was to cover:

> (1) [t]he relationships, if any, between Defendants and Z5X and Zee5, including but not limited to any ownership, licensing or alter-ego relationship; (2) the extent of Zeel's contacts with New Jersey and the United States; and (3) any other matters that the Magistrate Judge deems reasonably related to the jurisdictional and forum questions raised in Defendants' motion to dismiss and this Order.

*Id.*  Jurisdictional discovery was completed in April 2025, D.E. 58, at which point, the parties re-briefed Defendants' Motion.  In the Motion, Defendants argue that the Amended Complaint ought to be dismissed on multiple grounds, including because:  (1) the Court lacks personal jurisdiction over Zeel; (2) the Forum Selection Clause contained within the Terms of Use makes clear the parties agreed to litigate Plaintiffs' claims in India; and (3) Plaintiffs fail to state a claim against Asia TV under the VPPA.  *See* Mot.

## II.    LEGAL STANDARD[10]

Dismissal on *forum non conveniens* grounds "reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).    Under the doctrine, "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Id.* at 425.

If no forum selection clause is present, a district court considers the following four factors when deciding whether to dismiss an action on *forum non conveniens* grounds:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Dobco Inc. v. Union Cnty. Improvement Auth.*, No. 25-754, 2025 WL 3140699, at *5 (D.N.J. Nov. 10, 2025) (quoting *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017)).  However, "[t]he

---

[10] Defendants partially rely on Federal Rule of Civil Procedure 12(b)(3) to argue that the Court should dismiss the Amended Complaint and enforce the Forum Selection Clause in the Terms of Use.  *See* Mot. at 25.  However, "the Supreme Court held that 'Rule 12 (b)(3) [is] not [a] proper mechanism[ ] to enforce a forum-selection clause,' and that '[i]nstead, the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*.'"  *Amazon Produce Network, L.L.C. v. NYK Line*, 679 F. App'x 166, 168 (3d Cir. 2017) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013)).

Defendants at other points assert that the doctrine of *forum non conveniens* provides a basis for the Court to dismiss this action based on the Forum Selection Clause, and the Court will construe Defendants' Motion accordingly.  *See id.* (affirming a court's decision to construe a motion to dismiss under the doctrine of *forum non conveniens* where the defendant referenced the doctrine, cited cases that relied on the doctrine, and advanced arguments under the doctrine throughout its brief).

calculus changes . . . when the parties' contract contains a valid forum-selection clause." *Atl. Marine*, 571 U.S. at 62-63 (citation modified).

The Supreme Court explained in *Atlantic Marine* that the analysis changes in three ways when there is a forum selection clause, only "two of which apply in the context of *forum non conveniens*."[11] *Brit. Telecomms. PLC*, 424 F. Supp. 3d at 368 (citing *Atl. Marine*, 571 U.S. at 63-65. at 63). "First, the district court must give no weight to the plaintiff's choice of forum." *Id.* (citing *Atl. Marine*, 571 U.S. at 63). In this context, "[d]eference to a plaintiff's choice of forum is inappropriate" because "the plaintiff has already freely agreed to an appropriate venue." *Parts Geek, LLC v. U.S. Auto Parts Network, Inc.*, No. 09-5578, 2010 WL 1381005, at *4 (D.N.J. Apr. 1, 2010) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995)). Consequently, "the plaintiff bears the burden of establishing that exceptional circumstances exist to deprive a defendant of its bargained-for forum." *Brit. Telecomms. PLC*, 424 F. Supp. 3d at 368 (citing *Atl. Marine*, 571 U.S. at 63).

"Second, the court must give no weight to the private interests of the parties" because "'when parties agree to a forum-selection clause, they waive their right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64). In other words, a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64.

---

[11] "The third way—which has to do with the law that applies in the transferee venue under [28 U.S.C.] § 1404(a)—has no applicability to *forum non conveniens* because its remedy is dismissal, not transfer to another federal court." *Brit. Telecomms. PLC v. Fortinet Inc.*, 424 F. Supp. 3d 362, 368 n.3 (D. Del. 2019) (citing *Atl. Marine*, 571 U.S. at 63-65).

At bottom, where there is a valid forum selection clause, the Court will only consider the second and fourth factors enumerated in *Dobco Inc.*:  (a) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable and (b) relevant 'public interest' factors[12] affecting the convenience of the forum.  2025 WL 3140699, at *5 (citations omitted).  The Supreme Court has noted that these factors "will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *AGB Contemp. A.G. v. Artemundi LLC*, No. 20-1689, 2021 WL 1929356, at *9 (D. Del. May 13, 2021) (quoting *Atl. Marine*, 571 U.S. at 62, 64); *see also Dobco Inc.*, 2025 WL 3140699, at *5 ("[T]he party resisting application of a forum selection clause . . . bears a heavy burden under *Atlantic Marine* of establishing the forum selection clause should not be enforced." (quoting *Collins*, 874 F.3d at 186-87)).

The Third Circuit has consistently recognized that "[c]ontract clauses reflecting a chosen forum are typically '*prima facie* valid and should be enforced' unless a plaintiff can demonstrate that 'enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972)).  "The decision to dismiss a case on *forum non conveniens* grounds rests in the sound discretion of the trial court." *M&B IP Analysts, LLC v. Cortica-US, Inc.*, No. 19-429, 2020 WL 3411027, at *2 (D.N.J. June 22, 2020) (citing

---

[12] "The public interests include: (1) the enforceability of the judgment; (2) practical considerations in making the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Tuoni v. Elec. Evidence Discovery Inc.*, No. 10-2235, 2010 WL 5441656, at *3 (D.N.J. Dec. 23, 2010) (citing *Danka Funding, LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (3d Cir. 1995)).

*Windt v. Qwest Commc'ns, Inc.*, 529 F.3d 183, 188-89 (3d Cir. 2008)).   As each case turns on a unique set of facts, a "district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion."  *Windt*, 529 F.3d at 188.

## III.    ANALYSIS

As noted above, Defendants move to dismiss the Amended Complaint on both jurisdictional and merits-based grounds.  While a federal court may not rule on the merits of an action without first determining that it has jurisdiction over both the subject matter and the parties, the Supreme Court has "recognized that a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits."  *Sinochem Int'l*, 549 U.S. at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) and citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 100-01 n.3 (1998)).  In *Sinochem International*, the Supreme Court confirmed that a "*forum non conveniens* dismissal 'den[ies] audience to a case on the merits.'"  *Id.* at 432 (quoting *Ruhrgas*, 526 U.S. at 585).  In other words, because a *forum non conveniens* dismissal "is a determination that the merits should be adjudicated elsewhere," a district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."  *Id.*

As explained in more depth below, the Court concludes that this action should be dismissed under the doctrine of *forum non conveniens*.  Accordingly, the Court addresses the parties' arguments on this front first.

### A.    *Forum Non Conveniens* and the Forum Selection Clause

The Forum Selection Clause contained with the Terms of Use reads as follows:

12

<u>LAW DISPUTES</u>

These TERMS and all matters arising from it are governed by and construed in accordance with the laws of India and courts of Mumbai, India shall have exclusive jurisdiction over all disputes arising in connection with these TERMS.

Terms of Use at 12.

Defendants assert this is a valid and enforceable Forum Selection Clause that requires the Court to dismiss the Amended Complaint on *forum non conveniens* grounds. But before the Court can conduct the *forum non conveniens* analysis outlined in *supra* Section II.B, it must first determine whether "the forum selection clause (1) is enforceable; and (2) applies to the claim at issue." *AGB Contemp. A.G.*, 2021 WL 1929356, at *7. In addition, "[b]ecause '[a] forum selection clause is enforceable only if it is mandatory,' the Court must [also] decide the threshold question whether the forum selection clause[] at issue [is] mandatory or permissive." *The Indian Express Priv. Ltd. v. Hali*, No. 20-2741, 2022 WL 154354, at *4 (D.N.J. Jan. 18, 2022) (quoting *Nitterhouse Concrete Prod., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 587 (D.N.J. 2018)). After determining these issues, the Court can then proceed to consider the adequacy of the alternative forum and the relevant public interest factors. *See AGB Contemp. A.G.*, 2021 WL 1929356, at *9.

      *1.*     *The Forum Selection Clause is mandatory*

"A mandatory forum selection [clause] 'identifies a particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship.'" *Asphalt Paving Sys., Inc. v. Gen. Combustion Corp.*, No. 13-7318, 2015 WL 167378, at *5 (D.N.J. Jan. 13, 2015) (citing *Int'l Bus. Software Sols., Inc. v. Sail Labs Tech.*, 440 F. Supp. 2d 357, 363 n.1 (D.N.J. 2006)).[13]

---

[13] Despite ample caselaw within the Third Circuit to address this issue, Defendants exclusively rely on cases from other circuits that reach the same conclusion to argue that the Forum Selection

Here, the Forum Selection Clause states, in relevant part, that the courts of Mumbai, India "*shall have exclusive jurisdiction* over all disputes arising in connection with" the Terms of Use. Terms of Use at 12 (emphasis added).  The presence of "exclusive or obligatory language" renders a forum selection clause mandatory.  *See Frutera Agrosan Exp. SPA v. MSC Mediterranean Shipping Co., S.A.*, 727 F. Supp. 3d 526, 532 (E.D. Pa. 2024) (citations omitted).  Given the presence of the term "exclusive jurisdiction" within the Forum Selection Clause, this Court concludes that it is mandatory.[14]

2.    *The Forum Selection Clause is valid and enforceable*

The parties also dispute whether the Forum Selection Clause is valid[15] and enforceable. "[F]orum selection clauses are '*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'"  *Hage v. Am. Bd. of Obstetrics & Gynecology*, No. 19-21198, 2020 WL 3056442, at *6 (D.N.J. June 9, 2020) (quoting *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991)).  To overcome a presumptively valid forum selection clause, the party objecting to it—here, Plaintiffs—must establish:  "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy

---

Clause is mandatory.  *See, e.g.*, Opp'n at 18-19 (citing *Davis v. Meta Platforms, Inc.*, No. 22-1001, 2023 WL 4670491, at *10 (E.D. Tex. July 20, 2023)).  As explained *infra*, caselaw from other circuits in not binding on this Court.

[14] Moreover, Plaintiffs failed to oppose this argument in their Opposition.  The Court agrees with Defendants that Plaintiffs have conceded the point.  Reply at 10; *see also O'Neal v. Middletown Twp.*, No. 18-5269, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019) ("Plaintiffs fail[ed] to present any substantive argument in opposition to Defendants' argument . . . [and] have conceded the point.").

[15] Relying on *Davis*, a district court case from the Eastern District of Texas, Defendants treat validity as a separate question from enforceability.  Mot. at 19.  In the Third Circuit, courts typically consider a forum selection clause valid unless it is shown to be unenforceable.  *See, e.g.*, *Podesta*, 684 F. App'x at 216.  In line with these cases, the Court will presume the Forum Selection Clause is valid unless Plaintiffs show otherwise.

14

of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id.* at *6 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989)).

Plaintiffs make no argument that the Forum Selection Clause was the product of fraud or overreaching. Nor do they argue that enforcement would violate public policy. Instead, Plaintiffs focus their challenge to the enforceability of the Forum Selection Clause on the notion that it would be "unreasonable to require Plaintiffs to litigate this action in India despite [Zeel's] profiting significantly from its U.S.-based conduct." Opp'n at 20. "A forum selection clause is unreasonable, and enforcement of such a clause should be denied, only if the party resisting enforcement can demonstrate that the selected forum is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Oak Sys., Inc. v. Francotyp-Postalia, Inc.*, No. 01-2794, 2002 WL 442104, at *3 (E.D. Pa. Feb. 5, 2002) (quoting *M/S Bremen*, 407 U.S. at 18). This is intended to be a "strict standard." *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986) (citing *M/S Bremen*, 407 U.S. at 16). "To rise to the level of unreasonableness, the objecting party must show more than 'mere inconvenience or additional expense.'" *Parts Geek*, 2010 WL 1381005, at *4 (quoting *Banc Auto, Inc. v. Dealer Servs. Corp.*, No. 08-3017, 2008 WL 4055830, at *3 (E.D. Pa. Aug. 28, 2008)). "Absent that, there is no basis for concluding that [the forum selection clause] would be unfair, unjust, or unreasonable." *M/S Bremen*, 407 U.S. at 18.

Plaintiffs compare this case to *Copperweld Steel Co. v. Demag-Mannesmann-Bohler*, 578 F.2d 953, 965 (3d Cir. 1978), where the Third Circuit affirmed a district court's refusal to enforce a forum selection clause that required litigation in Germany because:

> (1) the facility that was the subject of the action was located in Ohio and was likely to become the object of an inspection during trial; (2) the facility was fabricated by a Pennsylvania contractor; (3) the records concerning operation of the plant were in the United States; (4) Plaintiff's personnel who operated the plant were in the United States; (5) all of the personnel who negotiated this contract were in the United States; (6) certain of Defendant's personnel were in the United States and Defendant maintained an office in Pittsburgh; (7) all of the activities in connection with the contract took place in the English language; (8) all of the witnesses spoke English; (9) conducting litigation in Germany would have required translation.

*Elli*, 2006 WL 2927622, at *4 (citing *id.* at 966). In their Opposition, Plaintiffs draw three comparisons between the present case and *Copperweld*: (1) the class of plaintiffs in both cases were based in the United States; (2) defendants in both cases generated "millions of dollars" in sales in the United States; and (3) "'everything done in connection with'[16] the Plaintiffs' use of the Zee5 Service and [Zeel's] violative disclosures to third-parties occurred in the United States." *Id.* at 20 (quoting *Copperweld*, 54 F.R.D. at 542).

The Court is not persuaded by Plaintiffs' limited comparisons to the district court and Third Circuit's opinions in *Copperweld* and finds the facts of this case distinguishable in several meaningful respects. For example, there is no equivalent of an in-person inspection at a facility based in the United States that would render litigation in India gravely difficult. It is also not clear where the relevant records and witnesses are located. And, even if the witnesses were all located in the United States, "the expense of producing witnesses alone does not render a forum selection clause unreasonable." *Gen. Eng'g*, 783 F.2d at 359. In the Court's view, Plaintiffs' framing of "unreasonableness" on the grounds that Zeel has contacts in the United States and profits from its presence here misses the point: the question is not whether *Zeel* can litigate the matter in *this*

---

[16] Plaintiffs' use of this quotation is slightly misleading. In *Copperweld*, the district court reasoned that "[p]ractically everything done in connection with this transaction *has been done in the English language.*" *Copperweld Steel Co. v. Demag-Mannesmann-Boehler*, 54 F.R.D. 539, 542 (W.D. Pa. 1972). Plaintiffs' application of the quotation to a different context—*i.e.*, to the location of the alleged tort—is inapplicable.

Court, but rather, whether *Plaintiffs* will be "deprived of [their] day in court" if the Court enforces the Forum Selection Clause and requires Plaintiffs to litigate this action in India. *M/S Bremen*, 407 U.S. at 18. The fact that Defendants generated sales in the United States or targeted the United States market does not speak to whether it is unreasonable to enforce the Forum Selection Clause. In fact, the only reference to the millions of dollars in sales in *Copperweld* came at the district court level in the context of exercising jurisdiction over the defendant, and not with respect to the enforceability of the forum selection clause. *See Copperweld*, 54 F.R.D. at 541-42.

In sum, Plaintiffs have failed to show any reason why enforcing the Forum Selection Clause would be unreasonable such that they would be deprived of their day in court. Therefore, the Court finds that the Forum Selection Clause is enforceable.

### 3. The Forum Selection Clause applies to the parties' dispute

The parties also dispute whether Plaintiffs claims are encompassed within the Forum Selection Clause. Mot. at 19-22; Opp'n at 14-18. Here, the Forum Selection Clause states:

> These TERMS and all matters *arising from it* are governed by and construed in accordance with the laws of India and courts of Mumbai, India shall have exclusive jurisdiction over *all disputes arising in connection with* these TERMS.

Terms of Use at 12 (emphasis added).

A court interpreting a forum selection clause applies principles of contract law to determine the scope of the clause. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997); *accord Collins*, 874 F.3d at 180. The Third Circuit "ha[s] stressed that whether or not a forum selection clause applies to a particular dispute depends on what the specific clause at issue says." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 98 (3d Cir. 2018) (citation modified). The Third Circuit has also instructed that when undertaking this inquiry, courts should

consider cases analyzing forum selection clauses with similar language. *See John Wyeth & Bro.*, 119 F.3d at 1075.

In *Parts Geek*, the Court did just that. 2010 WL 1381005, at *6-7. There, the plaintiff was suing Google for negligence related to an advertising contract between the parties that provided that the plaintiff would participate in a particular Google program. *Id.* at *3. The contract had a forum selection clause that applied to "claims arising out of or relating to [an] agreement or the Google Program(s)." *Id.* Turning to Third Circuit precedent for guidance, the Court in *Parts Greek* explained:

> In *John Wyeth & Bro. Ltd.* [], the Third Circuit construed the scope of a forum selection clause that covered "any dispute arising out of or *in relation to* this Agreement." *Id.* at 1072 (emphasis added). Then–Judge Alito interpreted the term "arising in relation to" to mean that the dispute has some "logical or causal connection" to the contract, and rejected the plaintiff's narrow interpretation that the forum selection clause applied to causes of action arising from the contract itself. *Id.* at 1074. The Court noted that the plain language of the forum selection clause did not vest exclusive jurisdiction merely of *claims* but applied more broadly to "*disputes* bearing the requisite relationship to the" contract. *Id.* The Court thus held the parties "to the sweeping language that they adopted," distinguishing cases involving forum selection clauses that did not contain language extending its reach to disputes "relating" to the contract. *Id.* at 1075-76; *see also Crescent Int'l, Inc. v. Avatar Cmties., Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (collecting cases demonstrating "a principle that pleading alternative non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms").

*Id.* at *6. Accordingly, the Court held that "[i]n light of the controlling Third Circuit precedent applying forum selection clauses to causes of action 'relating to' the subject matter of the contract containing the forum selection clause, [the Court] must conclude that the forum selection clause applies" given the plaintiff's claims were predicated on allegations involved Google's AdWords program. *Id.* at *7.

Like the plaintiff in *Parts Greek*, Plaintiffs repeatedly argue that their claims do not "arise from" the Terms of Use. *See* Opp'n at 15. But in doing so, Plaintiffs read out the phrase "in

connection with" from the Forum Selection Clause and construe the Forum Selection Clause in an impermissibly narrow manner. The Third Circuit determined that "arising in relation to" is broader than "arising under," 119 F.3d at 1074-75, and following this precedent, district courts in this Circuit have found analogous contractual language to apply "very broad[ly]." *See AGB Contemp. A.G.*, 2021 WL 1929356, at *8 (interpreting a forum selection clause mandating that "[a]ny dispute, controversy, or claim arising out of *or in connection with* this Agreement" broadly); *see also TrustID, Inc. v. Next Caller, Inc.*, No. 18-172, 2019 WL 1324948, at *2 (D. Del. Mar. 25, 2019) (finding trade secret misappropriation and interference claims to fall within the scope of a broad forum selection clause mandating that "[a]ny dispute that may arise in connection with the interpretation or implementation of this Agreement" be filed in Colorado).

Against this backdrop, the Court finds that the dispute between the parties has a "logical or causal connection"[17] to the contract such that it arises in connection with the Terms of Use. *John Wyeth & Bro*, 119 F.3d at 1074. The Terms of Use explicitly incorporate the Privacy Policy, which provides extensive information regarding the potential use of users' PII and that it may be made "available to strategic partners." Privacy Policy at 6. Indeed, the Privacy Policy includes disclosures that third-parties "may use information (including but not limited to your name, address, email address or telephone number or other [PII]) about your visits or use to particular website, mobile application or services, in order to provide personali[z]ed advertisements about goods and services of interest to you." *Id.* Given these disclosures go to the heart of the Amended Complaint, the Court agrees with Defendants that "it is clear the present dispute arises within the

---

[17] The Third Circuit's requirement that a dispute must have a "logical or causal connection" to the parties' agreement is different from the Eleventh Circuit's "some direct connection" requirement on which Plaintiffs' rely. *See* Opp'n at 16-17 (quoting and citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011)). Accordingly, the Court is not persuaded by Plaintiffs' line of reasoning that relies on multiple cases from other circuits.

scope of the [Terms of Use] and [the] related Privacy Policy." Mot. at 21. Moreover, as Plaintiffs note, some of Plaintiffs' allegations "map directly onto the Privacy Policy"—namely, Plaintiffs' allegation that Defendants never received permission to share users' PII, Am. Compl. ¶ 20 a contention that the Privacy Policy directly addresses. Mot. at 21-22.

The Court is not persuaded by Plaintiffs' arguments that this dispute falls beyond the scope of the Terms of Use. Plaintiffs mainly assert that their claims do not arise from the Terms of Use because their "claims have nothing to do with enforcing any particular provision of the [Terms of Use] or Defendants' breach thereof." Opp'n at 15 (citing *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1104 (9th Cir. 2023)). Relatedly, relying again on *Jackson*, Plaintiffs also argue that their claims are not "connected with" the Terms of Use because their claims arise independently of any contract. Opp'n at 16-17.

The Court finds Plaintiffs' reliance on *Jackson* and multiple other cases from outside the Circuit to be misplaced, not only because these cases are, at best, persuasive,[18] but also because their reasoning is inapplicable to the facts of this case and in tension with Third Circuit precedent.[19] In *Jackson*, the plaintiff signed up to be a driver for Amazon through the Amazon Flex program and signed a contract with an arbitration clause that covered "any dispute or claim . . . arising out of or relating in any way to this Agreement, including . . . participation in the program or . . .

---

[18] *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 246 (3d Cir. 2013) (explaining that out-of-circuit cases are not binding in this Circuit).

[19] Moreover, *Jackson* concerned the scope of a motion to compel arbitration, whereas this action concerns the scope of a forum selection clause. When confronted with the opposite scenario—*i.e.*, a party disputing the scope of an arbitration clause relying on caselaw discussing the scope of a forum selection clause—this Court noted that "[a]lthough this [distinction] is not dispositive, it does highlight a substantial postural difference between the cases and underscores the fact that [one] matter [was] governed by the Federal Arbitration Act, 9 U.S.C.A. § 1 *et seq.*, and its underlying policies." *Elli*, 2006 WL 2927622, at *4 (citations omitted).

performance of services." 65 F.4th at 1095 (citation modified). The Ninth Circuit found that Amazon's alleged unlawful conduct (wiretapping drivers' communications and invading their privacy by monitoring closed Facebook groups) fell outside the scope of the arbitration agreement because the claims were not related to the parties' performance under the agreement. The Ninth Circuit reasoned that the plaintiff's claims did not depend on any terms of his contract because Amazon's liability did not turn on their agreement with the plaintiff—for example, if non-Amazon employees joined the Facebook groups which Amazon allegedly improperly monitored, those individuals too could bring the same claims against Amazon that the plaintiff did. *Id.* at 1102. Therefore, the plaintiff's claims were not dependent on the terms of the contract, and thus, fell outside the scope of the provision. *Id.*

By contrast, here, *only users* of Zee5 could assert Plaintiffs' claims as Zee5 could not share the PII of individuals who did not sign up for their services. Therefore, unlike in *Jackson*, Plaintiffs claims and the dispute between the parties *are* dependent on the Terms of Use because there is no non-employee equivalent that the Ninth Circuit identified in *Jackson*. Because the dispute between the parties—whether Defendants improperly shared users' PII without obtaining consent to do so in violation of the VPPA—arises in connection with the Terms of Use, the Court concludes that the Forum Selection Clause applies to Plaintiffs' claims.

Plaintiffs also claim their causes of action are tort claims that "'exist[] independently' of the Terms of Use," and therefore, do not arise from the Terms of Use. Opp'n at 15 (quoting *Jackson*, 65 F.4th at 1104). The Third Circuit has made clear that "[a]n action need not allege contract-based claims in order for a forum selection clause in a contract to be enforced so long as the claims 'stem from the contractual relationship.'" *Podesta*, 684 F. App'x at 217 (quoting *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 220 (3d Cir. 2015)). "The narrow

interpretation suggested by [Plaintiffs] would permit avoiding a forum selection clause by simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum." *Crescent Int'l*, 857 F.2d at 945; *see also Magla Prods., LLC v. Chambers*, No. 06-115, 2006 WL 2846274, at *4 (Sept. 29, 2006, D.N.J.) (finding that claims for tortious interference, unjust enrichment, and breach of duty of loyalty arise out of contract and are therefore subject to forum selection clause within the contract). At bottom, regardless of whether Plaintiffs' claims are rooted in a contractual or tort theory, the Court concludes that these claims arise in connection with the Terms of Use.

### 4.    Analysis of the remaining forum non conveniens factors

Having determined that the parties' dispute falls within the scope of a valid and enforceable forum selection clause, the Court's remaining task is to consider: (1) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable and (2) relevant 'public interest' factors affecting the convenience of the forum. *Collins*, 874 F.3d at 186 (citing *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)). "Those two factors will overcome the preselected forum only in 'unusual,' 'exceptional,' or 'extraordinary' circumstances." *The Indian Express Priv. Ltd.*, 2022 WL 154354, at *6 (quoting *Atlantic Marine*, 571 U.S. at 62-64).

### a.    Adequacy of the alternative forum

"An alternative forum is adequate if (1) all defendants are amenable to process there and (2) the claims are cognizable there." *Emqore Envesecure Priv. Cap. Tr. v. Singh*, No. 20-7324, 2022 WL 4104261, at *7 (D.N.J. Sept. 7, 2022) (first citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); then citing *Wilmot v. Marriot Hurghada Mgmt, Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017)).

Defendants' amenability to process in India is not in dispute.  In fact, Plaintiffs have already served Defendants in India.  *See* D.E. 60-7.

The second element—whether Plaintiffs' claims are cognizable in India—is more complex.  Claims are generally found to be cognizable "if the alternative forum 'permit[s] litigation of the subject matter of the dispute' and 'provide[s] a remedy' that is not 'so clearly inadequate or unsatisfactory that it is no remedy at all.'"  *Emqore*, 2022 WL 4104261, at *7 (quoting *Solari v. Goodyear Tire and Rubber Co.*, 654 F. App'x 763, 766 (6th Cir. 2016)).

Defendants argue that India's Digital Personal Data Protection Act, which regulates Indian companies that collect and disseminate personal data online, is an adequate alternative legal remedy.  Mot. at 24 (citing D.E. 60-8, The Digital Personal Data Protection Act, 2023, (August 11, 2023) (herein, the "DPDPA")).

The DPDPA is intended to "provide for the processing of digital personal data in a manner that recogni[z]es both the right of individuals to protect their personal data and the need to process such personal data for lawful purposes."  DPDPA Preamble.  It applies to the processing and collection of digital personal data both within India, as well as outside of India, if done in connection to the offering of goods or services within India.  *Id.* § 3.  Under the DPDPA, an individual seeking to raise a claim must first attempt to resolve their grievance directly with the entity that is the subject of their complaint.  *See id.* §§ 11-13.  If the grievance is not resolved, the individual may then file a complaint with the Data Protection Board of India (the "Board"), which serves as an independent body with the power to direct immediate remedial actions, investigate data breaches, and issue fines for violations of the DPDPA.  *Id.* § 27(1).  Under the DPDPA, the Board is given broad authority to issue orders it considers necessary to effectively discharge its

functions.  *Id.* § 27(2).  And while the Board is not a civil court itself, it is vested with the same

powers as a civil court.  *Id.* § 28(7).

If an individual seeks to challenge a decision made by the Board, they may file an appeal

with the Appellate Tribunal, the Telecom Disputes Settlement and Appellate Tribunal established

under section 14 of the Telecom Regulatory Authority of India Act, 1997.  *Id.* § 29.   The Board

has exclusive adjudicatory authority to penalize violations of the DPDPA and the DPDPA does

not contain a private right of action.  *See generally id.*

Plaintiffs argue that the lack of a private right of action under the DPDPA renders India an

inadequate forum.  Opp'n at 21-22.  In support of their argument, Plaintiffs cite two cases where

courts in this District have refused to enforce a forum selection clause and based that decision in

part on the fact that the moving party failed to establish the proposed forums had no remedies

available to the plaintiff, including a private right of action for the claims the plaintiffs were

pursuing in this District.  *See id.* at 21-22 (first quoting *Dean-Hines v. Ross Univ. Sch. of Veterinary

Med., DeVry, Inc.*, 2006 WL 8457564, at *4 (D.N.J. Aug. 10, 2006); then quoting *Nieminen v.

Breeze-Eastern*, 736 F. Supp. 580, 583 (D.N.J. 1990)).  For example, the movant in *Dean-Hines*

failed to show that the alternative forum had a private right of action or that the forum had statutes

like ones that the plaintiff could bring a suit under in this District.  2006 WL 8457564, at *4.

In the Court's view, these cases demonstrate that absent any proof that an alternative forum

is adequate—*i.e.*, that the plaintiff can litigate the subject matter in the alternative forum and

redress their harms there in some form—a court should refuse to enforce a forum selection clause.

*See Acuna-Atalaya v. Newmont Mining Corp.*, 838 F. App'x 676, 680 (3d Cir. 2020) (noting that

a defendant is required to persuade the court that the alternative forum is adequate) (citations

omitted).  However, these cases do not require any particular remedy to be present for the Court

24

to find an alternative forum adequate.  *See Miller v. Bos. Sci. Corp.*, 380 F. Supp. 2d 443, 449 (D.N.J. 2005) ("[T]his Court did not imply in *Nieminen* that a *forum non conveniens* motion would necessarily fail in the absence of such evidence.").  Nor do these cases stand for the proposition that Plaintiffs assert they do:  that a private right of action *must* be available in the alternative forum for the Court to find that forum adequate. As one case reviewing *Dean-Hines* explained, *Dean-Hines* "involved a forum where the plaintiff would have been afforded absolutely *no* remedy in a foreign jurisdiction." *Fenton Whelan Ltd. v. Cleveland Clinic Found.*, No. 25-275, 2025 WL 3003924, at *9 (N.D. Ohio Oct. 27, 2025).  This distinction flows from *Piper Aircraft*, which held that dismissal on *forum non conveniens* grounds would be appropriate where "the alternative forum does not permit litigation of the subject matter of the dispute" or where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is *no remedy at all*."  454 U.S. at 254 & n.22.  Thus, the question for the Court is not whether a certain remedy is present—such as a private right of action—but rather, whether no remedy is present that Plaintiffs would effectively be provided with no remedy at all.  *See Miller*, 380 F. Supp. 2d at 449 ("As previously noted, the court's role in ascertaining the adequacy of the proposed alternative forum is a limited one, and is generally satisfied by a finding of the defendant's amenability to process and the availability of some remedy in the foreign jurisdiction.").

Although the DPDPA does not contain a private right of action, the Court finds that it provides Plaintiffs with an adequate path to litigate the subject matter of this dispute and sufficiently redress their harms in accordance with the purposes and goals of the VPPA.  As explained above, "the VPPA was passed in direct response to the publication of a newspaper profile about then-Supreme Court nominee Judge Robert Bork based upon the titles of movies he had rented from a local video store." *In re Nickelodeon Consumer Priv. Litig.*, No. 12-7829, 2014

WL 3012873, at *10 (D.N.J. July 2, 2014) (citations omitted).  The VPPA's Legislative History makes clear that it was passed to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials."  *In re Hulu Priv. Litig.*, No. 11-03764, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014) (citing S. Rep. 100-599, at 2 (1988)).  Thus, the VPPA provides individuals with a cause of action to preserve their personal privacy when certain information is shared without their consent and allows a court to issue monetary and injunctive relief to remedy any violation of the VPPA.

Unlike the VPPA, the DPDPA does not provide an avenue for *Plaintiffs* to recover monetary damages for an alleged violation; under the DPDPA, it is the *State* who would recover any financial fines imposed.  But, just like the VPPA, the DPDPA permits injunctive and equitable relief to stop the unlawful sharing of PII with third parties.  In the Court's view, the equitable powers available to the Board of India to stop the unlawful dissemination of PII demonstrates how Plaintiffs are able litigate the subject matter of their dispute in India and are provided a remedy in the foreign jurisdiction.  The Court recognizes that the VPPA is a more financially lucrative cause of action than the DPDPA.  But "[a] remedy is not inadequate merely because it is less favorable to the plaintiff than the remedy available in his chosen forum."  *Miller*, 380 F. Supp. 2d at 448 (citing *Piper*, 454 U.S. at 250).  Given the DPDPA provides Plaintiffs with a path to be awarded equitable relief to stop the sharing of their PII, the Court concludes that the DPDPA provides Plaintiffs with a remedy to sufficiently redress their claims.

Plaintiffs also argue that India is an inadequate forum because of a significant backlog in cases in Indian courts.  Opp'n at 22-23.  But as Plaintiffs note in their Opposition, the DPDPA grievance process is wholly independent of the civil courts in India.  *See id.* at 21 (noting that the DPDPA "establishes a sort of administrative panel to hear grievances regarding disclosure of

personal data without consent"). Thus, any backlog in Indian courts has no impact on the timing of any adjudication before the Board under the DPDPA. In fact, the DPDPA explicitly has a goal of quickly resolving claims brought before it, which the Court sees as a further indication that Plaintiffs' claims will be addressed promptly. *See, e.g.*, DPDPA § 29(6) (directing the Appellate Tribunal to handle appeals "as expeditiously as possible and endeavour . . . to dispose of the appeal finally within six months from the date on which the appeal" is filed).

In sum, the Court finds that India is an adequate alternative forum.

> b.    *Public interest factors*

Having found India an adequate alternative forum, the Court will proceed to consider the public interest factors, including:

> (1) the enforceability of the judgment; (2) practical considerations in making the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Tuoni*, 2010 WL 5441656, at *3 (D.N.J. Dec. 23, 2010) (citations omitted). "This list of considerations to be balanced is by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Jun Zhang v. Gain Cap. Holdings, Inc.*, No. 20-9426, 2021 WL 2103233, at *9 (D.N.J. May 25, 2021) (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-29 (1988)). Because these factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Wolfe v. TBG Ltd.*, No. 13-3315, 2014 WL 325637, at *5 (E.D. Pa. Jan. 28, 2014) (quoting *Atl. Marine*, 571 U.S. at 64). Plus, where, as here, "the plaintiff defied the parties' forum selection clause by filing in a non-chosen forum," the plaintiff "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* (quoting *Atl. Marine*, 571 U.S. at 67).

Although the parties do not address the public interest factors head-on, the Court finds that the factors do not overwhelmingly disfavor enforcing the forum selection clause. As analyzed above, India is an adequate alternative forum to adjudicate this matter as Plaintiffs have a path to address the Defendants' alleged wrongful dissemination of their data and be awarded equitable relief. And because the DPDPA is separate from the Indian civil courts, Plaintiffs' proof of a backlog is beside the point. Plus, the Forum Selection Clause calls for this dispute to be adjudicated under Indian law, and the Cout finds that the Board is better suited to interpret the DPDPA than this Court. *See Knopick v. UBS AG*, 137 F. Supp. 3d 728, 737 (M.D. Pa. 2015) (finding that a Swiss court is better suited to interpret questions under Swiss law, which was the law agreed to in the parties' forum selection clause).

"The Court also considers 'practical considerations that would make the trial easy, expeditious[,] or inexpensive.'" *Parts Geek*, 2010 WL 1381005, at *9 (quoting *Wayne v. Fuji Photo Film USA, Inc.*, No. 07-5536, 2008 WL 3832406, at *3 (E.D. Pa. Aug.14, 2008)). The two named Plaintiffs are United States citizens residing in Illinois and Massachusetts. Am. Compl. ¶¶ 199-200. Plaintiffs also seek to represent a class of individuals throughout the United States. *Id.* ¶ 207. While the Court recognizes it likely would be more convenient for Plaintiffs to litigate the matter in the United States, there is little information before the Court that suggests that any key witnesses, exhibits, or other evidence are located in this District. In fact, excerpts from the deposition of Mr. Kolleri cited in Plaintiffs' Opposition suggest that Zeel—the parent company based in India—operates Zee5 in almost every meaningful respect and that Zeel's employees are based in India. *See* D.E. 60-13, at 4-6, 83-84. If anything, it appears that key witnesses and information are located there, and it would be more efficient to litigate the matter in India.

The Court recognizes that the United States has an interest in enforcing the alleged wrongful violation of its laws, including the VPPA. However, the Court also recognizes that India has an equally strong interest in enforcing its laws, and through its enactment of the DPDPA, has demonstrated a desire to protect individuals' personal data from being unlawfully shared. *See* DPDPA Preamble (recognizing the right of individuals to protect their personal data); *see also Knopick v. UBS AG*, 137 F. Supp. 3d 728, 737 (M.D. Pa. 2015) ("While the Court acknowledges that Pennsylvania has a local interest in banking regulation, the Court is persuaded that Switzerland has an equally strong interest in policing the foreign activities of its native financial institutions."). And because the two named Plaintiffs are citizens of Massachusetts and Illinois, the Court concludes that New Jersey does not have a particularly strong interest in this action or need to protect its citizens in particular.

Having completed its *forum non conveniens* analysis and determined that the Court should enforce the Forum Selection Clause, the Court will **GRANT** Defendants' Motion on those grounds.[20] Furthermore, because "'[t]ransfer is not available . . . when a forum selection clause specifies a non-federal forum,' dismissal is the sole option." *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 87 (3d Cir. 2006) (quoting *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001)). Accordingly, the Court will **DISMISS** this action.[21]

---

[20] Because the Court decides Defendants' motion on *forum non conveniens* grounds, the Court need not decide whether the Court has personal jurisdiction over Defendants or reach the merits of whether the Amended Complaint fails to state a claim. *Hage*, 2020 WL 3056442, at *9.

[21] "Additionally, because the Court finds amendment would be futile, dismissal of Plaintiff's Complaint pursuant to the doctrine of *forum non conveniens* is with prejudice." *Jun Zhang*, 2021 WL 2103233, at *10.

**IV.    CONCLUSION**

For the reasons explained above, the Court will **GRANT** Defendants' Motion and **DISMISS** the Amended Complaint ***with prejudice***.    An appropriate Order accompanies this Opinion.


Dated: December 29, 2025


                                                                    **/s/ Hon. Evelyn Padin**
                                                                    _____
                                                                    Evelyn Padin, U.S.D.J.

30